STATE OF NEBRASKA, APPELLEE, V.
STEVEN R. BOCKMAN, APPELLANT.

648 N.W.2d 786

Filed July 2, 2002.   No. A-01-887.

Jerry J. Fogarty, Deputy Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Steven R. Bockman appeals his convictions for burglary and first degree sexual assault. On appeal, Bockman challenges the district court's ruling denying a motion to suppress DNA evidence, the district court's ruling allowing the State to introduce evidence of an attempted burglary charge to which Bockman had previously pled guilty, and the sufficiency of the evidence to support the convictions. We find the district court had a substantial basis for finding probable cause existed to issue a warrant for the DNA evidence to be gathered, and the court did not err in denying the motion to suppress. We find no abuse of discretion in the court's ruling that the State could introduce evidence of Bockman's prior conviction for attempted burglary. We also find sufficient evidence to support Bockman's convictions. Accordingly, we affirm the judgment of the district court.

## II. BACKGROUND

On November 7, 2000, an information was filed charging Bockman with burglary and first degree sexual assault and alleging the events occurred on or about June 10, 1998. Amended informations containing the same charges were filed on February 26 and March 1, 2001. The alleged events occurred in Grand Island, Nebraska.

On December 6, 2000, the State filed a notice of intent to offer evidence of Bockman's "prior 'bad acts' from 1998 crimes which were not charged and one prior conviction of attempted burglary." The State indicated the evidence would be offered for purposes of showing intent, plan, motive, and opportunity.

On February 28, 2001, Bockman filed three motions to suppress. Bockman sought suppression of statements, physical evidence collected during the execution of a search warrant, and

DNA evidence obtained as a result of a court order. The district court held hearings on the State's motion for admission of Bockman's other bad acts and Bockman's motions to suppress on March 7 and 16.

On March 19, 2001, the court made a journal entry reflecting that the court was granting Bockman's motions to suppress statements and physical evidence collected during the execution of a search warrant. The court made an additional journal entry denying Bockman's motion to suppress DNA evidence and another journal entry ordering that the State could present evidence of Bockman's plea to an unrelated charge of attempted burglary and evidence of the circumstances of the other case. The court denied the State's motion to present evidence of any other bad acts.

## 1. DNA EVIDENCE

On March 7, 2001, the court heard Bockman's motion to suppress DNA evidence. At the hearing, the only evidence presented by the State in support of the admission of the DNA evidence was an exhibit which contained the application, supporting affidavit, and subsequent order of the court granting the State's application to collect DNA evidence. The court, in ruling on the motion to suppress, specifically excluded three paragraphs of the affidavit because the paragraphs referenced physical evidence collected during the execution of a search warrant, which evidence the court separately held should be suppressed.

The remainder of the affidavit includes assertions that the affiant is a police officer who was assigned to investigate a burglary and first degree sexual assault occurring on or about June 10, 1998, assertions that the affiant personally spoke with the victim of the burglary and sexual assault, details from the affiant's conversation with the victim, assertions concerning the results of "[t]he investigation by officers of the Grand Island Police Department," and other factual assertions that do not specifically indicate their source or foundation.

For example, one assertion is that "[t]wo weeks prior [to June 10, 1998], D.L. [the victim] had come hame [sic] and found the same basement screen off and the window to her basement bedroom open." Additional assertions are that Bockman was arrested on April 7 for a burglary, that Bockman was found hiding

in an apartment shower, that Bockman advised officers that he had been looking for money, and that Bockman was subsequently convicted and sentenced on charges of criminal trespass and attempted theft. Another assertion is that Bockman was also convicted of attempted burglary for a July 2 incident, in which Bockman had stolen items including women's underwear and personal photos, had entered a house through a window, and had other stolen items in his possession. Further assertions are that Bockman had been arrested on April 14 for disturbing the peace when he had been "allegedly looking into the window of a bedroom" and that Bockman was also a suspect in other cases of "window peeking."

The affidavit also contains assertions that the investigation by Grand Island police officers revealed that the perpetrator of the burglary and sexual assault at issue had entered the victim's residence by removing a screen and entering through a basement window, that officers located footprints in the alley behind the victim's home, and that testing by the state criminalistics laboratory revealed a boot worn by Bockman showed "some correspondence in design and physical size" to the footprints. The details of the burglary and sexual assault at issue indicate that the victim was asleep on a couch in her home when she was awakened by the sound of someone in her home and that the intruder placed a blanket over the victim's head and sexually assaulted her.

Based on the affidavit, the district court filed an order on June 28, 1999, finding that Bockman should be compelled to provide the requested evidence of blood, hair, and saliva samples. In Bockman's motion to suppress this evidence, he asserted that the affidavit contained insufficient probable cause. On March 19, 2001, the district court overruled the motion to suppress this DNA evidence. In so ruling, the court found that the assertions concerning the footprints and Bockman's boot, the similar mode of entry in both the July 2, 1998, crime and the present case, and the "sexual nature" of the items stolen on July 2 established probable cause that Bockman committed the crimes under investigation.

### 2. OTHER BAD ACTS EVIDENCE

On March 7 and 16, 2001, the court heard the State's motion for admission of evidence of other crimes allegedly committed

by Bockman. As noted above, the motion filed by the State indicated that the evidence was being offered for purposes of showing intent, plan, motive, and opportunity. Further, at the hearing on the State's motion, the State indicated the evidence was also being offered for purposes of showing identity.

During the course of the hearing, the State presented evidence concerning several other crimes in which Bockman was allegedly involved. The crimes were largely burglaries involving theft of property, and none involved a sexual assault. The court ultimately held that only one of the other bad acts would be admissible, an attempted burglary conviction arising out of events occurring on or about July 2, 1998, in which the victim was identified as Nancy Gonzalez.

During the hearing, Gonzalez testified she had lived alone at 2512 West First Street in Grand Island in July 1998. Gonzalez indicated she returned to her home in the early morning hours of July 3 and found a window open. After searching the house to determine if her valuables were missing, Gonzalez reported that "nothing significant" was missing. Grand Island police officers later arrested Bockman at a separate location and found in his possession a pair of silk underwear belonging to Gonzalez, as well as some keys, some paperwork, and a photograph which had been taken from Gonzalez' home.

During the hearing, the victim in the present case also testified. She indicated she lived at 2414 West First Street in Grand Island in June 1998. In the early morning hours of June 11, she was sleeping on her couch and was awakened by the sound of somebody coming up the stairs from her basement. She indicated she was sexually assaulted by the intruder. She further testified that although no items were stolen from her, she determined later that morning that some lingerie appeared to have been moved, as well as a pair of handcuffs she had received as a gag gift. She further testified a screen had been "misplaced" from a basement window.

After the conclusion of the hearing, the court filed a journal entry. The court found the State would "be allowed to present evidence of prior acts for the limited purpose of identity only to include an incident involving victim Nancy Gonzales [sic] occurring July 2, 1998." As such, the court did not allow the

State to present evidence of other alleged bad acts or to present evidence for a purpose other than to show identity.

### 3. CONVICTION AND SENTENCE

On March 23, 2001, a jury returned a verdict of guilty on both counts. On July 3, the court sentenced Bockman to consecutive terms of 3 to 5 years' imprisonment for the burglary conviction and 16 to 20 years' imprisonment for the first degree sexual assault conviction. Bockman has appealed.

## III. ASSIGNMENTS OF ERROR

On appeal, Bockman has assigned three errors. First, Bockman asserts the district court erred in overruling his motion to suppress DNA evidence. Second, Bockman asserts the district court erred in allowing the State to introduce evidence of the Gonzalez incident to show identity. Third, Bockman asserts the evidence was not sufficient to support his convictions.

## IV. ANALYSIS

### 1. SUPPRESSION OF DNA EVIDENCE

First, Bockman asserts the district court erred in overruling his motion to suppress DNA evidence. In so asserting, Bockman challenges the sufficiency of the affidavit upon which the warrant for collection of the DNA evidence was issued. Bockman argues the affidavit was insufficient because the assertions in the affidavit include information that was not alleged to have been within the personal knowledge of the swearing officer and because no further basis for crediting the information was provided. Because we find that a reasonable interpretation of the affidavit compels the conclusion that the information contained therein emanated from either the personal observations of the affiant or from information obtained by fellow officers engaged in a common investigation, we find no merit to Bockman's assertion.

In determining the sufficiency of the affidavit in the present case,

> we are mindful that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract . . . [A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements

of elaborate specificity once extracted under common law pleadings have no proper place in this area."
*U.S. v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (quoting *United States v. Ventresca*, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)). The supporting affidavit must, of course, provide the judicial officer with sufficient reliable information to evaluate probable cause, and in the course of such evaluation, the judicial officer is entitled to draw reasonable inferences from the material in the affidavit. See *id.*

The affidavit in the present case specifically indicated that the affiant "was assigned to investigate" a burglary and a first degree sexual assault. The affidavit further indicated that there was an "investigation by officers of the Grand Island Police Department." The affiant set forth the information he personally gathered from interviewing the victim and further set forth information revealed by "[t]he investigation." A commonsense and realistic reading of the affidavit indicates that the information in the affidavit either is the personal knowledge of the affiant or was learned from other officers engaged in the common investigation of the burglary and first degree sexual assault of D.L.

It has long been held that statements by law enforcement officials based upon personal observation or upon the observation of fellow officials participating in the same investigation are entitled to a presumption of reliability. *United States v. Reed*, 700 F.2d 638 (11th Cir. 1983). See, also, *United States v. Ventresca, supra.* The Nebraska Supreme Court has similarly held that observations by fellow officers engaged in a common investigation are a reliable basis for a search warrant. *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980). Probable cause is to be evaluated by the collective information of the police as reflected in the affidavit and is not limited to the first-hand knowledge of the officer who executes the affidavit. *Id.* In general, no special showing of reliability is necessary where the affidavit indicates the source of information to be a law enforcement officer. See 2 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 3.5(a) (3d ed. 1996). As such, it is sufficient if the affidavit recites at the outset, or if it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law

enforcement officers. *United States v. Kirk,* 781 F.2d 1498 (11th Cir. 1986).

Although we recognize that the affidavit at issue is not as clear or as artfully drafted as would be ideal, the U.S. Supreme Court has clearly indicated that such inartfulness should not result in a warrant's being invalidated. See *United States v. Ventresca, supra.* The U.S. Supreme Court recognized that affidavits for search warrants are often drafted by nonlawyers in the midst and haste of a criminal investigation. *Id.* Further, the U.S. Supreme Court has recognized that a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. *Id.* As such, in evaluating the sufficiency of the warrant, the U.S. Supreme Court's dictates require an evaluation that is responsive both to the needs of individual liberty and to the rights of the community. *Id.*

The affidavit could have more clearly indicated what information was personally obtained or observed by the affiant and what information was personally observed or gathered by particular officers involved in the investigation. Nonetheless, a reasonable person reading the affidavit would be compelled to conclude that the information contained in the affidavit was acquired in the course of the common investigation. See *United States v. Reed, supra.* As such, a reasonable interpretation of the affidavit indicates that the issuing judge had sufficient reliable information to make a finding of probable cause.

In evaluating the showing of probable cause necessary to support a search warrant, only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. *State v. Stickelman, supra.* In reviewing the strength of an affidavit as a basis for finding probable cause to issue a search warrant, the Nebraska Supreme Court has adopted the "totality of the circumstances" rule established by the U.S. Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *State v. Ildefonso,* 262 Neb. 672, 634 N.W.2d 252 (2001). The judicial officer who is evaluating the probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of

knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The question is whether the judicial officer had a substantial basis for finding that the affidavit established probable cause. *Id.*

In the present case, as noted, the affidavit revealed information discovered by law enforcement officers during the investigation. This information suggested that a burglary and first degree sexual assault occurred at D.L.'s home; that the method of entry was similar to Bockman's method of entry in unrelated burglary offenses; that footprints bearing some correspondence to boots worn by Bockman were found outside D.L.'s home; that Bockman had previously stolen items of a personal nature, including women's underwear, from a previous victim; and that the present offense and Bockman's other offenses occurred in close physical proximity and time to each other. Our review of the totality of the circumstances indicates that the issuing judge had a substantial basis for finding probable cause. Bockman's assigned error concerning the sufficiency of the affidavit is without merit.

## 2. UNCHARGED BAD ACTS EVIDENCE

Bockman next alleges the district court erred in allowing the State to introduce evidence of Bockman's prior conviction for attempted burglary of Gonzalez. The court allowed the State to introduce evidence of the other bad act for the purpose of showing identity. Bockman asserts the evidence was not relevant because the other bad act was not sufficiently similar to the present alleged offense. We disagree.

The admissibility of other crimes evidence under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), must be determined upon the facts of each case and is within the discretion of the trial court. *State v. Sanchez,* 257 Neb. 291, 597 N.W.2d 361 (1999). Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rule 404(2), and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Freeman,* 253 Neb. 385, 571 N.W.2d 276 (1997); *State v. Carter,*

246 Neb. 953, 524 N.W.2d 763 (1994), *overruled on other grounds, State v. Freeman, supra.* Judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Carter, supra.*

▪ Rule 404(2) is a rule of inclusion, rather than exclusion, and it permits the use of evidence of prior activity except to prove the character of a person in order to prove that the person acted in conformity with that character. *State v. Freeman, supra.* See *State v. Carter, supra.* Rule 404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The list of acceptable uses recited in the rule is illustrative and not intended to be exclusive. *State v. Carter, supra.* However, evidence which is otherwise admissible under rule 404(2) may be excluded under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), if its probative value is substantially outweighed by other considerations. *State v. Carter, supra.*

▪ An appellate court reviews the admission of evidence of other acts under rule 404(2) by considering (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *State v. Freeman, supra; State v. Carter, supra.* See, also, *State v. Sanchez, supra.* The Nebraska Supreme Court has further held that the proponent of rule 404(2) evidence must state on the record the specific purpose or purposes for which the evidence is being offered and that the trial court shall similarly state the purpose or purposes for which such evidence is received. *State v. Sanchez, supra.* Any limiting instruction given upon receipt of such evidence should likewise identify only those specific purposes for which the evidence was received. *Id.*

Bockman specifically asserts the other crimes evidence in the present case was not relevant for a proper purpose. Bockman further asserts any probative value of the evidence did not substantially outweigh the potentially prejudicial effect of the evidence. Bockman does not dispute that the trial court did give a limiting instruction specifically informing the jury the other crimes evidence was being received solely for purposes of showing identity.

Gonzalez testified concerning an attempted burglary for which Bockman had previously been convicted. When comparing the factual context of the attempted burglary of Gonzalez with the factual context of the burglary and first degree sexual assault of D.L., the following similarities are apparent:

In both situations, the evidence indicates the victim was a woman. Both crimes occurred close in proximity to each other, the attempted burglary of Gonzalez occurring at 2512 West First Street in Grand Island and the burglary and first degree sexual assault of D.L. occurring at 2414 West First Street in Grand Island. Both crimes occurred close in time to each other, the attempted burglary of Gonzalez occurring on or about July 3, 1998, and the burglary and first degree sexual assault of D.L. occurring on or about June 11. Both crimes occurred during the early morning hours. The means of entry for both crimes was through a window. The attempted burglary of Gonzalez involved Bockman's removing a pair of Gonzalez' silk underwear from Gonzalez' home, and the burglary of D.L. involved some lingerie allegedly being moved, as well as a pair of handcuffs D.L. had received as a gag gift.

We do not find any abuse of discretion in the district court's conclusion that the evidence of Bockman's attempted burglary of Gonzalez was relevant and admissible for the proper purpose of demonstrating identity. Concededly, some differences between the two crimes do exist. However, an absolute identity in every detail is not and cannot be expected. See *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994), *overruled on other grounds, State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997). The question is whether the crimes are so similar, unusual, and distinctive that the trial judge could reasonably find that they bear the same signature. *Id.* If so, the evidence

may be admitted, and any dissimilarities merely go to the weight of the evidence. *Id.* As such, we find Bockman's assertions that the evidence was not relevant and was not admissible for a proper purpose to be without merit.

The question of whether the evidence was unfairly prejudicial hinges on whether the court properly instructed the jury concerning the evidence's limited use. *State v. Carter, supra.* See *State v. Freeman, supra.* When Gonzalez testified during the trial, the court gave the following limiting instruction to the jury:

> Members of the jury, the evidence regarding the incident which occurred on July 2nd and 3rd, 1998, involving Nancy Gonzalez shall be admitted for the limited purpose of proof of identity. You are not to consider it to prove the character of the defendant and that he acted in conformity with that character.

Additionally, at the conclusion of the trial, the court instructed the jury as follows:

> The evidence that the defendant may have committed a burglary on July 2nd or 3rd, 1998 at the home of Nancy Gonzales [sic] has been received only for the limited purpose of helping you to decide identity, that is, whether the defendant was the person who committed the Burglary and First Degree Sexual Assault charged. You must consider the evidence for that limited purpose and for no other. You may not consider such evidence to prove the character of the defendant and that he acted in conformity therewith.

The trial court's instruction, both at the time the evidence was received and at the conclusion of the trial, clearly directed the jury as to the limited use of the evidence. See *State v. Sanchez,* 257 Neb. 291, 597 N.W.2d 361 (1999). The evidence bears on the issue of identity, and that issue is what the court directed the jury to consider the evidence for, so it cannot be said that the evidence had a tendency to suggest a decision on an improper basis. See *id.* Therefore, we also find Bockman's assertion that the probative value of the evidence did not substantially outweigh any potential prejudicial effect to be without merit. The court did not commit an abuse of discretion in admitting the testimony of Bockman's attempted burglary of Gonzalez.

### 3. Sufficiency of Evidence

Bockman's final assertion of error is that the evidence was not sufficient to support a conviction for burglary and first degree sexual assault. Bockman argues the evidence was insufficient because the DNA evidence and the other crimes evidence were both inadmissible and because the remaining evidence was inadequate to support the guilty verdict. Inasmuch as we have concluded above that neither the DNA evidence nor the other crimes evidence was inadmissible, Bockman's assertion concerning the sufficiency of the evidence is also without merit.

### V. CONCLUSION

We find no reversible error in the trial court's rulings overruling Bockman's motion to suppress DNA evidence or allowing the State to introduce evidence of another crime committed by Bockman. We further find the evidence sufficient to support Bockman's guilty verdicts. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.