STATE OF NEBRASKA, APPELLEE, V.
VICTOR HERNANDEZ, APPELLANT.
689 N.W.2d 579

Filed December 10, 2004.    No. S-03-1365.

Christopher J. Lathrop for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Victor Hernandez appeals his jury convictions for first degree murder and use of a deadly weapon to commit a felony. He contends that (1) an affidavit for a search warrant was not supported by probable cause; (2) his counsel was ineffective for failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); (3) he should have been rearraigned after the information was amended to include language charging aiding and abetting; (4) DNA evidence was improperly admitted; and (5) a Spanish language *Miranda* advisory form failed to properly inform him of his rights. We affirm.

On May 26, 2002, the victim, Mindy Schrieber, was murdered during a robbery at her place of employment. The cause of death was multiple stab wounds, and she had additionally been driven over by a vehicle. In connection with the death, Hernandez and Luis Fernando-Granados, also known as Luis Vargas, were later charged and convicted for first degree murder and use of a deadly weapon to commit a felony.

## BACKGROUND

### AFFIDAVIT AND SEARCH WARRANT

After the murder, the Omaha police received an anonymous telephone call from a person subsequently identified as Meagan Kane. Kane provided information about the crime. She stated that the vehicle involved in the homicide was parked behind an apartment building near 31st and California Streets in Omaha, and she described it as a blue 1991 or 1992 Ford Escort on blocks. She stated that the vehicle's owner, "Victor," a Hispanic male about 21 years old, bragged about killing Schrieber. She also gave Hernandez' telephone number. It was later determined that Kane was Fernando-Granados' girl friend, although the officers did not know that at the time the call was taken.

Sgt. Mark Gentile of the Douglas County sheriff's office determined that the telephone number was listed to Hernandez and obtained the address for the number. He went with another officer to the 31st and California Streets area and then to Hernandez' address, where they located a Ford Escort in a parking lot; the vehicle was registered to Hernandez. The officers compared photographs of tire tread taken from Schrieber's pants to the left front tire of the Escort. In an application for a search warrant, the officers averred that the Escort was blue and that the tire tread matched. The officers examined the vehicle's undercarriage and averred in the warrant application that it matched an imprint on Schrieber's pants. The officers also observed small, thick, tissue-type substances splattered on the undercarriage in the same general area as a red and brown substance. The officers believed the substances to be bodily fluids such as blood and body tissue.

The officers described Kane's telephone call and their observations in an application for a search warrant. After the warrant was obtained, they seized various property, including a certificate of title showing that Hernandez owned the vehicle.

### HERNANDEZ' CONFESSION

On June 6, 2002, Hernandez gave a statement in Spanish to officers in Douglas County. Deputy Robert Jones—who is fluent in Spanish—used a Spanish language form to advise Hernandez of his *Miranda* rights. Hernandez stated that he understood his rights and did not request an attorney; he then confessed his involvement in the crime.

After Hernandez spoke with the officers, they obtained a search warrant for a residence where Hernandez had told them Fernando-Granados hid money. The officers found currency with blood on it that was sent to a forensic laboratory for testing.

### PRETRIAL PROCEEDINGS

Before trial, Hernandez moved to suppress evidence obtained from the search warrant. In the application for the warrant, Gentile averred that the tread and oil pan patterns "matched" photographs taken at the crime scene. However, at the hearing on the motion, Gentile stated that the patterns were "similar" to the photographs. Hernandez' motion was overruled, and the

certificate of title and photographs showing the vehicle's license plates were admitted into evidence at trial.

Hernandez also moved to suppress his statements, arguing that the Spanish *Miranda* warning was improperly worded so that it insufficiently explained that the accused had a right to an attorney. The motion was overruled.

Finally, a *Daubert* hearing was held about admissibility of the results of DNA testing on the currency using a polymerase chain reaction amplification (PCR) and short tandem repeat (STR) analysis. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The person who performed the test testified about the methods, his qualifications, and the laboratory's accreditation. The court determined that the test results were admissible.

In July 2002, Hernandez was initially charged with first degree murder and use of a deadly weapon to commit a felony. Hernandez was arraigned and pleaded not guilty. In September 2003, an amended information was filed charging aiding and abetting first degree murder. The record is silent whether Hernandez was re-arraigned on the amended information. A jury found Hernandez guilty, and he received consecutive sentences of life in prison for the murder conviction and 10 to 20 years' imprisonment for the use of a deadly weapon to commit a felony conviction.

## ASSIGNMENTS OF ERROR

Hernandez assigns that the district court erred by (1) overruling his motion to suppress evidence seized as a result of the search warrant, (2) failing to rearraign him on the amended information, (3) overruling his motion to suppress his statements, and (4) admitting the DNA test results. He also assigns that his counsel was ineffective for failing to seek a hearing about officer misrepresentations in the affidavit for the application for a search warrant.

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Thomas, ante* p. 570, 685 N.W.2d 69 (2004).

## ANALYSIS

### MOTION TO SUPPRESS EVIDENCE SEIZED
### FROM SEARCH WARRANT

Hernandez contends that the court should have sustained his motion to suppress because the affidavit failed to show probable cause for a search warrant. In arguing there was no probable cause, Hernandez points to the anonymous call, differences between where the vehicle was reported to be and actually found, and differences between information provided in the affidavit and in later testimony. In particular, he contends that the officers' comparison of photographs of tread marks and oil pan marks to the vehicle and statement that there was a "match" was not sufficient for probable cause. Instead, he contends that information from a crime laboratory was required to establish probable cause.

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Lammers*, 267 Neb. 679, 676 N.W.2d 716 (2004). The magistrate who is evaluating the probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The question is whether the issuing magistrate had a "substantial basis" for finding that the affidavit established probable cause. *State v. Thomas*, 267 Neb. 339, 673 N.W.2d 897 (2004).

In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Lammers, supra.*

An informant's reliability may be established by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made

a statement that is against his or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Lammers, supra.*

Here, the officers independently established the informant's reliability. They established that the telephone number was registered to a person named "Victor" and discovered a vehicle of the same reported model at the parking lot behind his residence. At this point, the officers could plainly observe further items that led to probable cause. Comparing photographs of tread and oil pan marks to the vehicle, the officers determined that there was a "match." They also observed what they believed was body fluid on the vehicle's undercarriage.

We also disagree with Hernandez' argument that a crime laboratory specialist should have provided information about the tread and oil pan marks before probable cause could be established. The statements provided in the affidavit were sufficient for a magistrate to believe there was a fair probability that contraband or evidence of a crime would be found in Hernandez' residence. We determine that the district court did not err when it overruled Hernandez' motion to suppress.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Hernandez contends that his counsel was ineffective because he failed to challenge the affidavit for the search warrant by filing a motion based on *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In *Franks*, the Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded

to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56.

Hernandez argues he was entitled to a *Franks* hearing because evidence later showed that the vehicle was black instead of blue and points to testimony where the officers said at the suppression hearing that the tread and oil pan marks looked "similar" instead of stating that they "matched."

Under the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McDermott*, 267 Neb. 761, 677 N.W.2d 156 (2004).

Although the record shows that Hernandez' counsel did not request a *Franks* hearing, we determine that such a failure did not demonstrate deficient performance by counsel. We have noted that under *Franks*, the defendant must make a substantial preliminary showing, including allegations of deliberate falsehood or of reckless disregard for the truth, supported by an offer of proof. *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001). Further, no hearing is required if, when the material which is the subject of the alleged falsity or reckless disregard is set aside, there remains sufficient content in the warrant affidavit to support a finding of probable cause. *Id.*

Here, the facts do not suggest that any statement in the affidavit was a deliberate falsehood or showed reckless disregard for the truth. A review of the record shows that when the officers stated in the affidavit that the tread and oil pan marks "matched," it was because the marks were "similar" to the patterns available in the pictures that the officers used for comparison. Hernandez' complaint about the use of the word "match" as compared to the word "similar" raises nothing more than a debate about differing interpretations of the words used and does not raise questions of deliberate or reckless falsehoods. Although the record states that

the vehicle was black instead of blue, Hernandez does not point to any intent of the officers to deceive. Further, we determine that without information about the vehicle's color, the warrant would still be sufficient to support a finding of probable cause. We conclude that Hernandez has not demonstrated that his trial counsel was ineffective for failing to request a *Franks* hearing. See *State v. Ildefonso, supra.*

### AMENDED INFORMATION

■ Hernandez argues that he should have been rearraigned when the information was amended to add language about aiding and abetting. Neb. Rev. Stat. § 29-1816 (Reissue 1995) provides in part:

> The accused shall be arraigned by reading to him or her the indictment or information, unless the reading is waived by the accused when the nature of the charge is made known to him or her. The accused shall then be asked whether he or she is guilty or not guilty of the offense charged. If the accused appears in person and by counsel and goes to trial before a jury regularly impaneled and sworn, he or she shall be deemed to have waived arraignment and a plea of not guilty shall be deemed to have been made.

Here, Hernandez appeared, was represented by counsel, and went to trial. Accordingly, he has waived any argument that he should have been rearraigned.

■ At oral argument, Hernandez argued that he should have also been provided proper notice of the amended information to prepare for trial and that the trial court had a duty to make a record to show that his counsel never raised the issue. Hernandez' assignment of error, however, addresses only the possibility that the court failed to rearraign him. An appellate court does not consider errors which are argued but not assigned. *State v. Tyma*, 264 Neb. 712, 651 N.W.2d 582 (2002). We conclude that Hernandez' assignment of error is without merit.

### MIRANDA ADVISORY FORM AND ADMISSIBILITY OF DNA TESTS

We recently decided the issues raised about the *Miranda* advisory form and admissibility of DNA tests in *State v. Fernando-Granados, ante* p. 290, 682 N.W.2d 266 (2004). Based

on *Fernando-Granados,* we conclude that these assignments of error are without merit.

## CONCLUSION

We conclude that there was sufficient evidence to support a finding of probable cause to issue the search warrant and that Hernandez' counsel was not ineffective by failing to request a *Franks* hearing. We further conclude that the district court did not err when it did not rearraign Hernandez or make a record showing that he had been rearraigned. Finally, the court did not err when it overruled Hernandez' motion to suppress statements and when it admitted into the evidence the results of DNA tests.

AFFIRMED.