STATE OF NEBRASKA, APPELLEE, V.
ADOLFO MONTANEZ HOLGUIN, APPELLANT.
708 N.W.2d 295

Filed January 17, 2006.   No. A-05-091.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Jon Bruning, Attorney General, and Matthew M. Enenbach for appellee.

IRWIN, SIEVERS, and MOORE, Judges.

SIEVERS, Judge.

## INTRODUCTION

Adolfo Montanez Holguin (Montanez) appeals his conviction in the Scotts Bluff County District Court for aiding and abetting in the manufacture of a controlled substance other than

marijuana, premising one of his assignments of error on the trial court's denial of his motion to suppress. We find that the search warrant relied on in this case was invalid and that a good faith exception to the exclusionary rule does not apply. Thus, the evidence seized from Montanez' motel room pursuant to that warrant should not have been received in evidence. Therefore, we reverse the conviction and remand the cause for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2004, Montanez was charged by information in the Scotts Bluff County District Court with the manufacture or distribution of a controlled substance (cocaine), or possession for such purpose, pursuant to Neb. Rev. Stat. § 28-416(1)(a) (Supp. 2003), and with conspiracy to manufacture a controlled substance (cocaine), pursuant to § 28-416(1)(a) and Neb. Rev. Stat. § 28-202(1)(a) (Reissue 1995). The dates in the information were amended, and such amended information was filed on October 26. The charges against Montanez were based on evidence seized, pursuant to a search warrant, during a June 18 search of a Scottsbluff, Nebraska, motel room (room No. 11), registered to Montanez. The evidence obtained in the search included a beer bottle containing eight clear plastic sandwich baggies with corners cut off, a black leather wallet with identification cards, $560 in cash, a digital scale, a small piece of tinfoil with a white powdery substance, a soft drink can with suspected marijuana residue, two 200-count boxes of 6¾- by 8-inch sandwich baggies, a corner of a clear plastic sandwich baggie with suspected cocaine residue, a gum wrapper with suspected cocaine residue, a pair of small blue scissors, a yellow-handled razor knife, and a motel receipt for room No. 11 in Montanez' name.

The affidavit in support of the warrant to search room No. 11 was signed by Scotts Bluff County Deputy Sheriff Trent Zwickl. Zwickl's affidavit stated that on June 17, 2004, while performing road patrol, he identified a red 1993 Mazda that he believed had expired in-transit stickers. Zwickl executed a traffic stop and made contact with the driver. Deputy Bob DeLara, a Spanish-speaking officer, was called to the scene because the driver appeared not to speak English. The driver was asked to

exit the vehicle based on a strong odor of alcohol and suspicious activity. Zwickl worked his drug detection dog around the vehicle, and the dog alerted on the vehicle. Upon searching the vehicle, an officer "found nine individually packaged small plastic baggies of a white substance possibly cocaine, inside a larger clear plastic baggy, between the [console] and the front passenger seat." Chemical field tests performed at the scene indicated a positive result for cocaine. A drug investigator, Det. Kent Ewing, was called to the scene. The driver identified himself as Julio Mendoza. After Mendoza was placed under arrest, officers placed him in one patrol car and then transferred him to another patrol car. After transferring Mendoza to the other patrol car, a search was conducted of the first patrol car and the officers recovered two corner pieces of plastic baggies with small amounts of residue of a white powdery substance.

The affidavit stated that during an interview with Mendoza, a key to room No. 11 was found on Mendoza's person. Permission to search the motel room was requested of Mendoza, but he refused, stating that the room belonged to someone else.

Zwickl stated in the affidavit that he, Ewing, and DeLara went to the motel, where Ewing was informed by an employee of the motel that the registered occupant of room No. 11 was "Alfredo [sic] Montanez." Zwickl stated that he was "aware that . . . Ewing as a member of [a] Drug Task Force ha[d] intelligence regarding . . . Montanez traveling back and forth between Greeley, Colorado and Scottsbluff . . . while transporting Cocaine." Zwickl's affidavit then concluded that there was probable cause to believe that "cocaine, paraphernalia associated with the use of cocaine, paraphernalia used for the measuring of cocaine, [and] paraphernalia for packaging and distributing cocaine, including but not limited to scales, baggies, baggie ties, mirrors, razor blades, needles, tubes and [vials]," were being kept in room No. 11.

On September 14, 2004, Montanez filed a motion to suppress the evidence seized in the search of room No. 11. Following an October 2004 hearing on the motion, the trial court overruled it, finding that "there was probable cause from the affidavit" to issue the warrant.

At trial, Montanez renewed his motion to suppress and made the necessary objections to preserve the matter of the legality of the search of room No. 11 for appellate review. At the conclusion of the jury trial, Montanez was found guilty of aiding and abetting the manufacture of cocaine and not guilty of conspiracy to manufacture cocaine. Montanez was sentenced to 2 to 4 years' imprisonment, with credit for 223 days served. Montanez appeals the conviction and sentence.

## ASSIGNMENTS OF ERROR

Montanez asserts that the trial court erred in (1) overruling his motion to suppress evidence seized at the motel pursuant to a search warrant and (2) imposing an excessive sentence.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005).

## ANALYSIS

*Did Affidavit Make Showing of Probable Cause?*

Montanez contends that the trial court erred in overruling his motion to suppress because the affidavit was not sufficient to establish probable cause for the search warrant and because the statement in the affidavit regarding Montanez' transportation of cocaine between Greeley and Scottsbluff tainted the affidavit, as there was no corroborating information supporting such statement.

■ A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Hernandez*, 268 Neb. 934, 689 N.W.2d 579 (2004). The magistrate who is evaluating the probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.*

Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002).

In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Hernandez, supra.* The question for the appellate court is whether, under the totality of the circumstances, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. See *id.*; *State v. Shock, supra.*

The essence of the affidavit before us is that after Zwickl stopped a red Mazda, driven by Mendoza, with suspected expired in-transit stickers, another officer found nine individually packaged small plastic baggies of what field tests showed to be cocaine inside a larger, clear plastic baggie within that vehicle. Officers also uncovered two corner pieces of plastic baggies with small amounts of residue of a white powdery substance. Mendoza had a motel room key in his pocket upon his arrest, and the motel room was registered to Montanez. And, Ewing, a member of a drug task force, had "intelligence" regarding Montanez' "traveling back and forth between Greeley . . . and Scottsbluff . . . while transporting Cocaine."

At the October 2004 suppression hearing, the trial court said:
> In overruling [Montanez'] Motion to Suppress, also, the Court finds there was probable cause from the affidavit to authorize Judge Lippstreu to issue a warrant to search Room 11 at [the] Motel because what was in that basis for the warrant was that [the driver of the red Mazda who was identified in the affidavit as Mendoza] had just been found with a pile of cocaine and key to a motel which one could infer cocaine came from, and evidence concerning it could still be there because he was alone, no one else would know. And, since he had access to that room, access to the car, and had cocaine in his possession, it's reasonable to

infer that there was evidence of how he got that cocaine in his car from that motel.

When one focuses on "probability," the foregoing inferences by the trial court are not practical and commonsensical inferences; nor do they reveal a substantial basis upon which the warrant was issued, unless it was by use of the claim that Montanez was known to be transporting cocaine between Greeley and Scottsbluff. Mendoza's concurrent possession of cocaine and somebody else's motel room key does not make it probable, without more information, that Mendoza's cocaine came from such motel room—bearing in mind (1) the numerous other ways that Mendoza could have come to possess the cocaine and (2) that the affidavit lacks any information that other collaborative investigation had revealed this motel room to be a cocaine trafficking location.

Thus, Ewing's "intelligence" about Montanez, asserted by Zwickl in the affidavit, becomes crucial, and we turn to whether Zwickl's statement that Ewing had "intelligence" regarding Montanez' transporting cocaine between Greeley and Scottsbluff is entitled to any recognition in the issuing magistrate's determination that there was probable cause that evidence of cocaine possession or trafficking would be found in room No. 11. Although observations by a fellow officer engaged in a common investigation are a reliable basis for a search warrant, *State v. Bockman*, 11 Neb. App. 273, 648 N.W.2d 786 (2002), Ewing's "intelligence" regarding Montanez' transportation of cocaine was not explained in Zwickl's statement in the affidavit as being Ewing's personal knowledge from firsthand observation, from investigation, or from informants. The affidavit simply does not explain how Ewing obtained this "intelligence"—for example, from an informant who had been shown to be reliable. See *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998) (discussing how reliability of various types of informant is established), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). Thus, the affidavit reveals no "underlying circumstances" supporting the assertion that Montanez was transporting cocaine between Greeley and Scottsbluff. See *State v. Huggins*, 186 Neb. 704, 706, 185 N.W.2d 849, 851 (1971) (affidavit may be based on hearsay and need not reflect direct

observations of affiant so long as magistrate is informed of some of underlying circumstances supporting affiant's conclusions). Although, in general, no special showing of reliability is necessary where the affidavit indicates the source of information to be a law enforcement officer, see *State v. Bockman, supra*, there must be some basis revealed in the affidavit beyond the fact that one officer informed another, who then made the affidavit. See *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998) (affidavit should include veracity and basis of knowledge of persons supplying hearsay information). Because Zwickl asserted what Ewing, another officer, knew, some basis for Ewing's "intelligence" about Montanez had to be in the affidavit. Without such basis, the magistrate could not properly evaluate the statement that Ewing had "intelligence" that Montanez was transporting cocaine.

Also lacking in the affidavit is any information as to when Montanez was allegedly transporting cocaine between Greeley and Scottsbluff in relation to the seizure of cocaine from Mendoza's vehicle—whether it was recently or years before is unsaid. See *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003). See, also, *State v. Johnson, supra* (proof of probable cause justifying issuance of search warrant generally must consist of facts so closely related to time of issuance of warrant as to justify finding of probable cause at that time), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). For these reasons, neither the issuing magistrate, the suppression hearing judge, nor this court can consider the claim that Ewing had "intelligence" that Montanez was transporting cocaine between Greeley and Scottsbluff.

"[W]here the affidavit before the issuing magistrate contains information that an appellate court will not consider in a probable cause determination, the decision of the issuing magistrate is not entitled to [great] deference, but, rather, must be reviewed de novo." *State v. Lee*, 265 Neb. at 678, 658 N.W.2d at 683. The remaining pertinent information in the affidavit was that upon the traffic stop of the red Mazda driven by Mendoza, an officer found nine individually packaged small plastic baggies of what field tests showed to be cocaine inside a larger, clear plastic baggie within that vehicle. Officers also uncovered

two corner pieces of plastic baggies with small amounts of residue of a white powdery substance in the police cruiser where they first placed Mendoza while searching the Mazda. Additionally, Mendoza had a motel room key in his pocket upon his arrest, and such motel room was determined to be registered to Montanez.

In *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999), *overruled on other grounds, State v. Davidson, supra*, Michael E. Johnson argued that the affidavit upon which a search of his home was premised was insufficient for the magistrate to have found probable cause. Johnson was arrested pursuant to a warrant for failure to pay child support. Upon his arrest, the arresting officer searched him and found a "small, clear plastic vial" on his person which field tests showed to contain methamphetamine. *State v. Johnson*, 256 Neb. at 135, 589 N.W.2d at 112. A search of Johnson's vehicle produced "a plastic bag containing two small paper packets" that the officer suspected to be " 'snow seals,' " which, according to the affidavit, were containers commonly used in the sale of controlled substances. *Id.* at 136, 589 N.W.2d at 112. The arresting officer, in preparing the affidavit, requested a warrant to search Johnson's home for controlled substances, drug paraphernalia, currency, weapons, and other items "generally associated with illicit drug trafficking." *Id.* However, the quantity of the methamphetamine found was not specified within the affidavit. The affidavit stated that the arresting officer was aware from training and experience and from information received from other officers that individuals frequently keep controlled substances at their residences and that Johnson was a person known to have engaged in the use and sale of controlled substances and who had " 'previously been convicted of drug charges.' " *Id.* A warrant was issued, and Johnson's residence was searched.

Johnson filed motions to suppress the seized evidence, alleging that the warrant was not supported by probable cause; the motions were overruled, and Johnson appealed. We reversed, finding that the affidavit did not establish probable cause because it "contained generalizations about the habits of users and dealers of controlled substances but lacked 'articulable facts . . . to support a finding of probable cause that these generalizations

applied to Johnson.'" *Id.* at 138, 589 N.W.2d at 113, quoting *State v. Johnson*, 6 Neb. App. 817, 578 N.W.2d 75 (1998). The Nebraska Supreme Court affirmed our decision, analyzing the facts and merits as follows:

> [T]he general statements in the affidavit concerning Johnson's prior conviction and involvement with controlled substances do not provide the temporal nexus necessary to establish probable cause. However, that nexus is present with respect to the methamphetamine and snow seals which were found in Johnson's possession hours before the search warrant was requested. The question, then, is whether these facts establish probable cause to believe that evidence of a crime would be found at Johnson's residence.

*State v. Johnson*, 256 Neb. 133, 144, 589 N.W.2d 108, 116 (1999), *overruled on other grounds, State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). The *Johnson* court continued its analysis, finding "nothing in the affidavit which would lead to a reasonable inference that Johnson was engaged in the sale of controlled substances at or near the time of his arrest." 256 Neb. at 144, 589 N.W.2d at 117. The court reasoned:

> The general statement that [the affiant arresting officer] was aware of Johnson's previous conviction of "drug charges" would not support such an inference, since there is no indication of the date of the conviction or whether it involved the sale, as opposed to possession, of controlled substances. Likewise, the fact that Johnson was in possession of an unspecified quantity of methamphetamine and three snow seals, described in the affidavit as "[items] used for the sale of controlled substances," provides no basis for inferring that Johnson was a seller of controlled substances, rather than a purchaser. Thus, even if we were to accept the State's premise that incriminating evidence is likely to be found in the homes of drug dealers, the affidavit on its face contains no facts from which it could reasonably be inferred that Johnson was a drug dealer at or near the time of his arrest. For these reasons, the district court's findings of fact upon which it denied Johnson's motions to suppress were clearly erroneous, and the Court of Appeals correctly concluded that [the officer's] affidavit

did not establish probable cause to justify the search of Johnson's residence.

*Id.* at 144-45, 589 N.W.2d at 117.

Here, the only information contained in the affidavit connecting Mendoza to room No. 11 was that he had a key to it. The fact that Mendoza possessed an unspecified amount of cocaine contained in nine small baggies, as well as a motel key, does not provide a basis for inferring that Mendoza was a seller of cocaine, rather than a purchaser for personal use, or a basis for inferring that evidence of any such sales by Mendoza would probably be found in someone else's motel room. In looking within the four corners of the affidavit, one cannot infer that there was a fair probability that contraband or evidence of a crime would be found in room No. 11, remembering that according to the affidavit, the room was registered not to Mendoza, the driver of the red Mazda, but, rather, to Montanez—and any assertion of any connection between Montanez and Mendoza must be ignored, as discussed above. Moreover, there were no facts recited in the affidavit to even suggest that room No. 11 had been investigated or watched by police, let alone that such investigation or surveillance produced something suggestive of drug trafficking. Because the affidavit did not make a showing of probable cause that evidence of a crime would be found in room No. 11, the search warrant for that motel room was invalid.

*Good Faith Exception to Warrant Requirement.*

However, when a search warrant is invalid, we still must consider the "good faith exception" to the exclusionary rule, which exception had its genesis in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). A concise explanation thereof, as well as the appellate court's analytical task in the case of an invalid warrant, is found in *State v. Edmonson*, 257 Neb. 468, 485-86, 598 N.W.2d 450, 463 (1999):

[P]ursuant to *Leon*, evidence obtained pursuant to an invalid search warrant should be suppressed only if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth; (2) the issuing magistrate wholly

abandoned his or her judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient—such as in failing to particularize the place to be searched or the things to be seized—that the executing officer cannot reasonably presume it to be valid. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In determining whether a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court looks to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit, to determine whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant.

The record reveals that only category 3 from *State v. Edmondson, supra,* is involved in this case. Therefore, for the purpose of this issue, we look outside the affidavit to the evidence adduced at the suppression hearing to determine whether the police officers who searched room No. 11 acted in objectively reasonable good faith in relying on the warrant. And, clearly, the only place we can look to assess the "totality of the circumstances" is within the record of the suppression hearing. See *U.S. v. Leach*, 80 Fed. Appx. 444 (6th Cir. 2003) (collecting cases holding that information possessed by officers, but not included in affidavit, can be considered for application of good faith exception set forth in *United States v. Leon, supra*). Obviously, the fruits of the search cannot be used to establish good faith. In short, we examine the evidence from the suppression hearing to determine what the involved officers knew and when they knew it.

The nature and extent of the connection between Montanez, Mendoza, and room No. 11, as well as Ewing's "intelligence" about Montanez, are the key analytic elements in this case when

we examine the totality of the circumstances. Ewing's testimony reveals that he is a seasoned member of a drug task force with significant experience in investigating drug cases, although this was apparently the first affidavit for a search warrant written entirely by Zwickl.

At the suppression hearing, evidence was admitted that Mendoza was the driver of the vehicle involved in a sale of cocaine to a confidential informant in a "controlled buy" on May 29, 2004, in Gering, Nebraska. While this buy was originally going to occur at a house in Gering which officers had under surveillance for drug trafficking due to "stop and go" traffic, the sellers changed the location to a bowling alley in Gering. A Scottsbluff Police Department investigator testified that the red Mazda Mendoza was driving on June 17 was the same vehicle the sellers used in the controlled buy on May 29, and, as noted above, there was evidence that Mendoza was the driver of the vehicle involved in the sale at the bowling alley. The evidence shows that the packaging and quantities of cocaine acquired from the controlled buy on May 29 and from the seizure from Mendoza on June 17 were very similar. Thus, from the totality of the circumstances, we conclude that the officers were aware, prior to the search of room No. 11, that Mendoza was a "drug dealer." However, there was no evidence adduced at the suppression hearing that Montanez, the man to whom room No. 11 was registered, was involved in the controlled sale to the confidential informant on May 29.

Moreover, there was no evidence of any prior surveillance of room No. 11 except that when describing finding the key to that room on Mendoza's person on June 17, 2004, Zwickl testified: "I found a key to Room No. 11 [of] the . . . Motel. . . . Ewing was, also, on [the] scene, and he had further information involving Room No. 11 at [that] Motel." But, when Ewing testified at the suppression hearing, he responded as follows to the State's attorney's questions:

Q. Who applied for the search warrant?

A. . . . Zwickl applied for the warrant.

Q. And, what was the location they were asked in [sic] the search?

A. Room at the . . . Motel. I believe it was No. 11.

Q. Why did they seek to search Room No. 11?

A. . . . Zwickl had information — I believe he might have found a room key to the . . . Motel that had that number on it.

Q. Did you assist in the execution of the search warrant at the . . . Motel?

A. Yes, I did.

Therefore, Zwickl's testimony that Ewing had "further information" about room No. 11 was not substantiated in any way when Ewing was given an open-ended question as to why the room was searched—Ewing said only that it was because of the key found on Mendoza. He said nothing regarding his "intelligence" about Montanez' moving cocaine between Greeley and Scottsbluff, nothing about "further information" he had on room No. 11, nothing about any connection between Montanez and the house in Gering where the above-described controlled buy was originally to occur, and nothing about a connection between Montanez and the known drug dealer Mendoza. For completeness, we note that the record reveals that the surveillance of the house in Gering revealed that a white Mercury automobile was part of the traffic observed there, but Montanez was not connected to that vehicle, in the evidence before us, until he was arrested on the morning after the search, at which time he was driving that vehicle, which was registered to him. But, significantly, this connection was made after the search and does nothing to help make a showing of "good faith" as contemplated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

In this case, the issue of the *Leon* good faith exception comes down to the statement in the affidavit that Ewing had "intelligence" that Montanez transported cocaine between Greeley and Scottsbluff and Zwickl's testimony that Ewing had "further information" about room No. 11. But, these statements are not substantiated, explained, or shown to be reliable in any respect by any evidence at the suppression hearing from Ewing or anyone else. Thus, on the record before us, Zwickl's unsubstantiated assertions about Montanez' transportation of cocaine or "further information" possessed by Ewing about room No. 11

provide no basis for any police officer with a reasonable knowledge of what the law prohibits, judged on an objective standard, to believe that reliance could be placed on the warrant. This is because the affidavit is so clearly lacking in indicia of probable cause on its face, being what has frequently been called a " 'bare bones' " affidavit in previously decided cases, see *U.S. v. Koons*, 300 F.3d 985, 991 (8th Cir. 2002) ("bare bones" affidavit is one which relies on uncorroborated tips or mere suspicion). Without the "intelligence" or "further information," Mendoza and Montanez are only tenuously connected by a motel room key and nothing else. While Ewing's "intelligence" or "further information" may have been such that he could reasonably believe that room No. 11 probably contained evidence of drug trafficking, the problem is that no basis for reliance on that belief is found anywhere in the record, and the standard is an objective one for a police officer with a reasonable knowledge of what the law prohibits, rather than a subjective one of what Ewing knew but did not disclose in the suppression hearing or in the affidavit.

The connection between Mendoza and Montanez is the solitary fact that Mendoza had a key to a motel room that was registered in Montanez' name. The fact that Mendoza, a cocaine dealer, has a key to a motel room does not make it probable that evidence of cocaine trafficking will be in that motel room, particularly when it is not registered to him, and the police, at least on the record before us, had no knowledge or even reason to believe—prior to the execution of the warrant—that Montanez or room No. 11 was involved with Mendoza's cocaine selling activities. For the *Leon* good faith exception to apply in the instant case, it must be "probable" from the totality of the circumstances that the officers objectively and reasonably believed that incriminating evidence would be found in room No. 11.

In conclusion, even when the totality of the circumstances is considered, the affidavit seeking a warrant for the search of room No. 11 was so lacking in indicia of probable cause as to render official belief in the existence of such cause entirely unreasonable. In this regard, Ewing's "intelligence" about Montanez' transportation of drugs between Greeley and Scottsbluff may well have filled the gaps, but no evidence about such transportation was introduced at the suppression hearing.

And, if Ewing had "further information" about room No. 11, as Zwickl said, that evidence might also have plugged the gaps; but likewise, no evidence was offered on that point. We cannot speculate about what the officers knew and when they knew it to fill in the gaps in the proof, and we apply an objective standard to the officers, not a subjective one. In others words, Ewing may well have had in hand plenty of evidence to link Mendoza and Montanez, to link Montanez to the transportation of cocaine from Greeley to Scottsbluff, or to link Montanez to the house in Gering, but such evidence must be in the record before we can consider it in the totality of the circumstances test under the good faith exception set out in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In short, this case reveals a failure of proof, not "bad faith" by the officers. Therefore, the good faith exception does not apply here and the trial court erred in overruling Montanez' motion to suppress. The fruit of the illegal search—the items seized from room No. 11 pursuant to a search on June 18, 2004—should have been suppressed.

*Remedy and Resolution.*

In deciding, based on the erroneously admitted evidence, whether to remand this cause for a new trial, we must determine whether the evidence presented by the State was sufficient to sustain the conviction. The Double Jeopardy Clause does not forbid retrial so long as the sum of the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). Although the evidence derived from the unlawful search of room No. 11 was erroneously admitted, we consider it in our analysis of the sufficiency of the evidence. See *id.* Considering such evidence and the other trial evidence, the evidence was clearly sufficient to sustain Montanez' conviction for aiding and abetting the manufacture of cocaine. Therefore, Montanez may be retried, but without the fruits of the unlawful search of room No. 11. We therefore reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.