Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/20/2018 08:12 AM CDT

State of Nebraska, appellee, v.
Kurt C. Krajicek, appellant.
___ N.W.2d ___

Filed March 13, 2018.    No. A-17-322.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Motions to Suppress: Pretrial Procedure: Trial: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress.

3. **Search and Seizure.** Application of the good faith exception to the exclusionary rule is a question of law.

4. **Constitutional Law: Search and Seizure: Search Warrants.** The Fourth Amendment to the U.S. Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and further provides that no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

5. **Constitutional Law: Search Warrants: Probable Cause.** The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees.

6. **Search Warrants: Affidavits: Probable Cause.** A search warrant, to be valid, must be supported by an affidavit which establishes probable cause.

7. **Search Warrants: Probable Cause: Words and Phrases.** Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found.

8. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause.

9. **Search Warrants: Affidavits: Evidence: Appeal and Error.** In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

10. **Search Warrants: Affidavits: Probable Cause.** The magistrate who is evaluating a probable cause question must make a practical, common-sense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

11. **Probable Cause.** Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found.

12. **Search Warrants: Probable Cause: Appeal and Error.** A magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts.

13. **Search Warrants: Affidavits: Appeal and Error.** After-the-fact scrutiny by courts of the sufficiency of an affidavit used to obtain a search warrant should not take the form of a de novo review.

14. **Search Warrants: Affidavits: Probable Cause: Appeal and Error.** Where the affidavit before the issuing magistrate contains information that an appellate court will not consider in a probable cause determination, the decision of the issuing magistrate is not entitled to such deference, but, rather, must be reviewed de novo.

15. **Constitutional Law: Search and Seizure: Evidence.** The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands.

16. **Search Warrants: Affidavits: Police Officers and Sheriffs: Evidence: Search and Seizure.** The good faith exception provides that even in the absence of a valid affidavit to support a search warrant, evidence seized under the warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant.

17. **Motions to Suppress: Search Warrants: Affidavits: Police Officers and Sheriffs: Evidence.** Evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Stuart J. Dornan and Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

After his motion to suppress evidence was overruled and following a stipulated bench trial, Kurt C. Krajicek was convicted in the Douglas County District Court of possession of a controlled substance and was sentenced to 2 years' probation. On appeal, Krajicek challenges the court's denial of his motion to suppress evidence obtained as a result of five search warrants. We affirm.

## FACTUAL BACKGROUND

Krajicek filed a motion to suppress evidence obtained from the execution of five search warrants, all of which were

obtained in the county court for Douglas County. The first search warrant, which Krajicek claims was based on an insufficient probable cause affidavit, lead to the issuance of all of the other warrants. We discuss each in turn.

*First Affidavit and Search Warrant—*
*Krajicek's Residence.*

On August 13, 2015, Investigator Kevin Finn of the Nebraska State Patrol presented a county court judge with an "Affidavit and Application for Issuance of a Search Warrant" (Affidavit #1) for a single family dwelling located at a specified address on Pinkney Street in Omaha, Nebraska (residence).

In his affidavit and application for a search warrant, Finn set forth the grounds for issuance of the warrant as follows:

On August 12, 2015 your affiant received information from Investigator Smoot #309 of the Nebraska State Patrol that Kurt Krajicek . . . is in possession of, using and distributing anabolic steroids from his residence. Your affiant was also informed Krajicek is renting the house and has a live in girlfriend . . . . Your affiant conducted a computer check of Krajicek and identified his primary address of . . . Pinkney St.

Your affiant verified the refuse pickup date was August 13, 2015. Investigators with the commercial interdiction unit conducted surveillance on the residence and observed a refuse bin filled with multiple trash bags sitting next to the roadside curb. Your affiant contacted an employee with Deffenbaugh [I]ndustries who agreed to assist with collection of the trash. Inv. Lutter observed a pickup belonging to Deffenbaugh [I]ndustries collect the trash from the residence and followed the vehicle to a meeting location. The garbage was handed over to your affiant and Lutter. Investigators returned to the Nebraska State Patrol Omaha office and conducted a search of the contents. Located within the trash were five syringe needles, two empty vials with the labeling of "[s]omatropin

(rDNA origin) for injection", miscellaneous papers of venue and miscellaneous papers believed to be relating to 13th [S]treet Brickhouse liquor establishment.

Your affiant conducted research of somatropin and determined it to be on a Drug Enforcement Administration list as a human growth hormone and discovered through DEA sources; as part of the 1990 Anabolic Steroids Control Act, the distribution and possession, with the intent to distribute, of hGH "for any use other than the treatment of a disease or other recognized medical condition, pursuant to the order of a physician" is a violation of Nebraska state statute 28-416.

Furthermore your affiant examined the two bottles of [s]omatropin and observed no indication of a valid prescription for Krajicek or identifiable numbers. Your affiant observed the bottles to be written in an unknown language similar to that of Japanese or Chinese writing, along with the previously described [E]nglish labeling. Your affiant believes these containers to be illegally obtained from another country.

Based on training and experience your affiant is aware that subjects involved in the sale and distribution of controlled substance[s] will maintain product records and money associated with the distribution of a controlled substance at their residence. [Y]our affiant believes that there is probable cause to believe and does believe that evidence of the distribution of controlled substance[s] will be located at . . . Pinkney St[.], Omaha[,] Douglas County[,] Nebraska.

Finn stated that he had just and reasonable grounds to believe, and did believe, that being concealed or kept in, on, or about the residence (including all outbuildings and vehicles on the property) was the following:

Anabolic steroids, marijuana, cocaine, heroin, methamphetamine, and/or other controlled substances, paraphernalia associated with the use, possession, manufacture,

and/or distribution of anabolic steroids, marijuana, cocaine, heroin, methamphetamine, and any other controlled substances, records, ledgers, [U]nited [S]tates currency, money orders, address books, telephones, computers, electronic or digital storage devices used to store information and/or papers reflecting names, addresses, telephone numbers of customers, associates, and co-conspirators, plus receipts indicating a conspiracy to sell anabolic steroids, marijuana, cocaine, heroin, methamphetamine, and any other controlled substances.

He requested a warrant authorizing a daytime search.

The county court judge authorized the search warrant, as requested, on August 13, 2015.

Finn executed the search warrant on August 18, 2015, and recovered "40 grams of marijuana," "122 vials of various size and brands of unknown type drugs," "2 containers with unknown tary substance," "[m]iscellaneous items of drug paraphernalia," "[m]iscellaneous documents/papers of venue," "[t]wo keys to safety deposit box," "[s]ix cellular phones," and "United States Currency $10,000." Finn filed a "Return and Inventory" of the search warrant on August 20.

*Second Affidavit and Search Warrant—*
*Safety Deposit Box.*

On August 18, 2015, Finn presented a county court judge with an "Affidavit and Application for Issuance of a Search Warrant" (Affidavit #2) for a safety deposit box at a bank in Omaha. In his affidavit and application for a search warrant, Finn set forth the information from Affidavit #1. He further stated that during the search of the Pinkney Street residence on August 18, a set of keys belonging to a safety deposit box were located. Finn stated that "[b]ased on training and experience [he] is aware that subjects involved in the sale and distribution of controlled substance[s] will maintain product records and money associated with the distribution of a controlled substance in safety deposit boxes." The list of property

he believed was being concealed or kept in the safety deposit box was the same as described in Affidavit #1. Finn stated that "said property is under the control or custody" of Krajicek. He requested a warrant authorizing a daytime search.

The county court judge authorized the search warrant, as requested, on August 18, 2015.

Finn executed the search warrant on August 18, 2015, and recovered "United States currency . . . eight hundred twenty one, one hundred dollar bills" and "[p]ackaging material." Finn filed a "Return and Inventory" of the search warrant on August 20.

*Third Affidavit and Search Warrant—*
*Krajicek's Office.*

On August 19, 2015, Finn presented a county court judge with an "Affidavit and Application for Issuance of a Search Warrant" (Affidavit #3) for a basement office belonging to Krajicek "located on the west side of address . . . S. 13 St[.]" in Omaha. In his affidavit and application for a search warrant, Finn set forth the information from Affidavit #1 and Affidavit #2. He further stated the search of the Pinkney Street residence on August 18

> resulted in the arrest of Krajicek for possession of approx-imately 122 vials of various sizes and brands of an unknown liquid believed to be anabolic steroids, $10,000 United States currency believed to be related to the distri-bution of a controlled substance, approximately 30 grams of marijuana and various types of drug paraphernalia relating to the marijuana and vials.

And during the search of Krajicek's safety deposit box on August 18, investigators "located an additional $82,100 in United States Currency believed to be obtained through illegal distribution of controlled substances."

Finn stated that he discovered through further investigation that Krajicek is the owner of a specified business and has an office located at "S. 13 [S]treet." He provided details of how

he learned about Krajicek's office, which included a mention of "13th [S]treet [B]rickhouse" (which had previously been referenced in relation to items found in the "trash pull" of the residence).

Finn stated that "[b]ased on training and experience [he] is aware that subjects involved in the sale and distribution of controlled substance[s] will maintain product records and money associated with the distribution of a controlled substance in various locations." The list of property he believed was being concealed or kept in the office was the same as described in Affidavit #1. Finn stated that "said property is under the control or custody" of Krajicek and/or a named business. He requested a warrant authorizing a daytime search.

The county court judge authorized the search warrant, as requested, on August 19, 2015.

Finn executed the search warrant on August 19, 2015, and recovered "[m]iscellaneous documents and items of venue" and a "Dell laptop computer and bag." Finn filed a "Return and Inventory" of the search warrant on August 20.

*Fourth and Fifth Affidavits and Search Warrants—
Electronic Devices.*

On September 25, 2015, Finn presented a county court judge with two "Affidavit[s] and Application[s] for Issuance of a Search Warrant" (Affidavits #4 and #5) for the electronic devices seized in previous searches of the Pinkney Street residence and Krajicek's office, and being held by the Nebraska State Patrol; any data on these items would be recovered by a computer forensic analyst. In his affidavits and applications for search warrants, Finn set forth the information from Affidavit #1, Affidavit #2, and Affidavit #3. He further described items found in each of the previous searches of the residence, safety deposit box, and office.

Finn said he knew that

in prior cases, computers, computer equipment, cellular phones, and digital media were seized and found to

contain evidence establishing ownership of the digital devices, involvement in criminal activity and ownership or use of any Internet service accounts, to include but not limited to, social media accounts, cloud storage accounts, email accounts, credit card accounts, telephone accounts, correspondence and other identification documents.

He included numerous pages detailing how he knew the above. He believed the "computers and/or digital devices/information/files" more fully described in the attachments would depict criminal activity involving the possession and/or possession with intent to deliver a controlled substance in violation of Nebraska law.

The county court judge authorized the fourth and fifth search warrants, as requested, on September 25, 2015. Finn executed the search warrants on September 26 and recovered a "White Dell laptop computer" with a specified serial number and a "Black Samsung Verizon Cell Phone"; any data on these items would be recovered by a computer forensic analyst. He filed a "Return and Inventory" of the search warrants on October 5.

## PROCEDURAL BACKGROUND

On September 18, 2015, Krajicek was charged with possession of a controlled substance, a Class IV felony, in the Douglas County District Court.

On December 18, 2015, Krajicek filed a motion to suppress all "physical evidence and all testimony in connection therewith" obtained as a result of the execution of the search warrants. Krajicek alleged the searches and seizures of evidence from his residence, safety deposit box, and office were unreasonable, unlawful, and violated one or more of his Fourth Amendment rights under the federal and Nebraska Constitutions. He alleged (1) "Any purported physical evidence or property taken from [him] or his residence was unreasonably, illegally and unconstitutionally seized by law enforcement officers without first obtaining a valid arrest

or search warrant, and was done without probable cause"; (2) the search warrants authorizing the search of his residence, safety deposit box, and office "were invalid because they were based on Affidavits so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; (3) the affidavits for the search warrants did not set forth "sufficient facts which could have supported the Affiant's conclusion that there was probable cause to believe that particular items of evidence, including safety deposit boxes, office or electronic devices, would be found at or within the above mentioned places at the time of the execution of the warrant"; (4) "[t]he scope of said searches exceeded the scope of the searches authorized within the search warrants, and therefore said searches were general and illegal as exploratory searches"; and (5) "[t]he search warrants lacked particularity with respect to the persons or things to be searched, items to be seized, and the manner and time for execution of the searches."

A suppression hearing was held on February 9, 2016. In lieu of in-court testimony, the challenge on the motion to suppress was confined to "the four corners of the documents." Five exhibits, containing the certified copies of the affidavits and search warrants issued and executed, along with the return and inventory for each, were received into evidence without objection. Krajicek argued that the initial affidavit, Affidavit #1, was lacking in probable cause because the information provided by an Investigator Smoot did not establish direct observation or information coming from a reliable informant and there was no evidence as to when the information was obtained. Krajicek further argued there was no evidence linking the trash that was at the curb to him or somebody at his residence. Krajicek argued that without probable cause on the first affidavit, the rest "basically fall from a domino effect."

In an order filed on June 3, 2016, the district court overruled Krajicek's motion to suppress after finding that four of the five search warrants were valid and supported by probable cause

and that the good faith exception applied to the searches under all five warrants.

The district court found search warrant Affidavit #1 provided sufficient information and details to establish probable cause to believe evidence of a crime would be found at Krajicek's residence because the materials found during the trash pull corroborated the information provided by Investigator Smoot and were otherwise "entirely independent and sufficient grounds for a finding of probable cause."

The court found search warrant Affidavit #2 did not provide sufficient information and details to establish probable cause to believe evidence of a crime would be found in the safety deposit box because the affidavit did not provide information as to where the set of keys were located during the search of the residence, how the keys were linked to Krajicek, if and how the officers determined the safety deposit box belonged to Krajicek, and how the affiant, Finn, believed Krajicek "is involved in the sale and distribution of controlled substance[s] where he would be maintaining product records and money associated with this distribution in a safety deposit box." Affidavit #2 did not include the various items located during the search of Krajicek's residence, such as the 40 grams of marijuana, 122 vials of various sizes and brands of unknown drugs, miscellaneous items of drug paraphernalia, 6 cellular phones, and $10,000 in cash which could be indicative of drug dealing behavior. "Affidavit #2 only includes that during the search of the residence, officers located a set of keys belonging to a safety deposit box." Thus, in reviewing the affidavit "only on the four corners," the court concluded probable cause to search the safety deposit box was not established. The court noted that the search warrant for the safety deposit box would have had sufficient probable cause if the affiant, Finn, had not left out the other items retrieved in the execution of the search warrant on Krajicek's residence.

The court found search warrant Affidavit #3 provided sufficient information and details to establish probable cause

to believe evidence of a crime would be found at Krajicek's office because, "[u]nlike in Affidavit #2, Affidavit #3 does include information from the affiant of the full results of the search of [Krajicek's] home . . . ." All previous information from Affidavit #1 and Affidavit #2 was also included in this affidavit, as well as how the affiant, Finn, linked Krajicek to his work address.

The court found search warrant Affidavits #4 and #5 provided sufficient information and details to establish probable cause to believe evidence of a crime would be found on the recovered electronics. Affidavits #4 and #5 included all information contained in the previous affidavits and noted what items were found during the execution of the first, second, and third search warrants. And the affidavits provided more than 10 pages of explanation for the link between electronic devices and criminal activity.

The court further found that the five search warrants did not exceed the scope of the probable cause in each warrant, that the warrants did not lack the particularity required by the Fourth Amendment, and that the good faith exception applied to the searches under all five warrants. The district court overruled Krajicek's motion to suppress "in all respects."

A stipulated bench trial was held on December 14, 2016, at which Krajicek preserved the issues concerning his motion to suppress. In an order filed on January 6, 2017, Krajicek was convicted of possession of a controlled substance and was later sentenced to 2 years' probation.

Krajicek appeals.

## ASSIGNMENT OF ERROR
Krajicek assigns the district court erred in denying his motion to suppress evidence.

## STANDARD OF REVIEW
[1,2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment,

an appellate court applies a two-part standard of review. *State v. Baker*, 298 Neb. 216, 903 N.W.2d 469 (2017). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Baker, supra*. When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *Id*.

[3] Application of the good faith exception to the exclusionary rule is a question of law. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014).

## ANALYSIS

*Probable Cause for Search Warrants.*

Krajicek argues, "The first search warrant obtained demands all of the attention in this case. The other four stemmed from the first and would not have been granted without the results of the first search warrant having been served." Brief for appellant at 9. He claims, "The other four search warrants [were] fruits of the poisonous tree." *Id.* at 17.

Krajicek contends, "The first search warrant authorizing search of the residence . . . was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 9. More specifically, Krajicek argues as follows: There was no explanation as to how Smoot came into possession of the information relayed; the affidavit does not specifically mention that the trash was from Krajicek's address, although he says such can be inferred in the context of the document; and "'miscellaneous papers of venue'" were not further described to connect the trash to Krajicek or his girlfriend or to the address on Pinkney Street. *Id*. at 13.

> The information contained within the four corners of the affidavit was so lacking in indicia of probable cause

because it was wholly void of the classification of the source, was wholly void of the basis for the information provided by the source, involved nothing more from the source other than a bare bones allegation, and the single trash pull . . . coupled with the affiant's research only yielded items that were entirely consistent with legal possession of a controlled substance.

*Id*. at 11. Krajicek asserts that "[a] suspicion to continue the investigation is not the equivalent of probable cause to justify intrusion into one's home." *Id*. at 9.

[4-9] The Nebraska Supreme Court has recently stated:

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . " and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protection.

The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees. Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and

circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

*State v. Hidalgo*, 296 Neb. 912, 917, 896 N.W.2d 148, 153 (2017).

[10,11] The magistrate who is evaluating a probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence f a crime will be found in a particular place. *State v. Holguin*, 14 Neb. App. 417, 708 N.W.2d 295 (2006). Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *Id.*

[12-14] A magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts. *State v. Bossow*, 274 Neb. 836, 744 N.W.2d 43 (2008). After-the-fact scrutiny by courts of the sufficiency of an affidavit used to obtain a search warrant should not take the form of a de novo review. *Id.* However, where the affidavit before the issuing magistrate contains information that an appellate court will not consider in a probable cause determination, the decision of the issuing magistrate is not entitled to such deference, but, rather, must be reviewed de novo. *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669 (2003).

We first consider whether Affidavit #1, for the search of the residence on Pinkney Street, contained probable cause to support the issuance of a warrant. In his probable cause affidavit, Finn said Smoot told him that Krajicek was in possession of, using, and distributing anabolic steroids from his residence. However, Finn's affidavit made no representation as to how

Smoot got this information, e.g. whether it was from his own observations, from investigation, or from an informant.

This is similar to *State v. Holguin, supra*, wherein as part of a probable cause affidavit to search, the affiant officer said that another officer, who was a drug investigator and a member of a drug task force, had intelligence that the defendant was traveling back and forth between Greeley, Colorado, and Scottsbluff, Nebraska, while transporting cocaine. The defendant appealed his conviction for aiding and abetting in the manufacture of a controlled substance other than marijuana, premising one of his assignments of error on the trial court's denial of his motion to suppress. On appeal, this court said:

> Although observations by a fellow officer engaged in a common investigation are a reliable basis for a search warrant, *State v. Bockman*, 11 Neb. App. 273, 648 N.W.2d 786 (2002), [the drug investigator's] "intelligence" regarding [the defendant's] transportation of cocaine was not explained in [the affiant officer's] statement in the affidavit as being [the drug investigator's] personal knowledge from firsthand observation, from investigation, or from informants. The affidavit simply does not explain how [the drug investigator] obtained this "intelligence"—for example, from an informant who had been shown to be reliable. See *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998) (discussing how reliability of various types of informant is established), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). Thus, the affidavit reveals no "underlying circumstances" supporting the assertion that [the defendant] was transporting cocaine between Greeley and Scottsbluff. See *State v. Huggins*, 186 Neb. 704, 706, 185 N.W.2d 849, 851 (1971) (affidavit may be based on hearsay and need not reflect direct observations of affiant so long as magistrate is informed of some of underlying circumstances supporting affiant's conclusions). Although, in general, no special showing of reliability is necessary

where the affidavit indicates the source of information to be a law enforcement officer, see *State v. Bockman, supra*, there must be some basis revealed in the affidavit beyond the fact that one officer informed another, who then made the affidavit. See *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998) (affidavit should include veracity and basis of knowledge of persons supplying hearsay information). Because [the affiant officer] asserted what [the drug investigator], another officer, knew, some basis for [the drug investigator's] "intelligence" about [the defendant] had to be in the affidavit. Without such basis, the magistrate could not properly evaluate the statement that [the drug investigator] had "intelligence" that [the defendant] was transporting cocaine.

*State v. Holguin*, 14 Neb. App. 417, 424-25, 708 N.W.2d 295, 303 (2006). Similarly, without knowing the basis for Smoot's information, neither the issuing magistrate, the suppression hearing judge, nor this court can consider his bare bones statement.

The suppression hearing judge in this case acknowledged that there was no information as to when or how Smoot obtained his information, but said the information was corroborated by Finn's independent investigation, i.e., the trash pull. We agree. Besides the statement from Smoot, the remaining pertinent information in the affidavit was that Finn conducted a "computer check of Krajicek" and identified his primary address as the address on Pinkney Street, which was for a single-family dwelling. Finn "verified the refuse pickup date was August 13, 2015. Investigators . . . observed a refuse bin filled with multiple trash bags sitting next to the roadside curb." A trash pull was done with the help of "Deffenbaugh [I]ndustries." Another investigator observed "Deffenbaugh [I]ndustries collect the trash from the residence" and followed the vehicle to a meeting place. The trash was handed over to that investigator and Finn. A search of the contents of the trash revealed five syringe needles, two empty vials with

the labeling of "[s]omatropin (rDNA origin) for injection," "miscellaneous papers of venue," and "miscellaneous papers believed to be relating to 13th [S]treet Brickhouse liquor establishment."

Krajicek claims that "[a]lthough the [trash pull] paragraph does not specifically mention that trash was pulled from the address of . . . Pinkney Street[,] arguably it can be inferred in the context of the document as a whole." Brief for appellant at 12. He further claims, "The 'miscellaneous papers of venue' were not further described to connect the trash to Krajicek or his girlfriend or to the address of . . . Pinkney Street." *Id*. at 13.

We find that as to both claims, practical commonsense inferences can be made that the trash pulled was sitting next to the curb in front of the address for which the search warrant was sought and that the "miscellaneous papers of venue" would have indicated that same address. And the affidavit reflects the address was for a single-family dwelling.

We acknowledge that Nebraska's case law on this issue is distinguishable. See *State v. Tompkins*, 14 Neb. App. 526, 710 N.W.2d 654 (2006), *reversed on other grounds* 272 Neb. 547, 723 N.W.2d 344, *modified on denial of rehearing* 272 Neb. 865, 727 N.W.2d 423 (2007) (trash set out for collection outside duplex with two units, one of which was occupied by defendant, that contained marijuana evidence but not venue items or other indicia of ownership or possession did not provide probable cause to issue warrant to search defendant and his unit for marijuana evidence; trash could not be affirmatively attributed to defendant). However, other jurisdictions have found that when a trash can is located in front of or behind a residence, inferences that the trash can and its contents originated from the residence can be made. See, *U.S. v. Gary*, 528 F.3d 324 (4th Cir. 2008) (officer's failure to state in affidavit for search warrant on defendant's residence that both trash cans marked and unmarked with house number were present directly behind defendant's residence and that

trash bags removed by officer were from two cans, rather than in trash can marked with subject house number, did not defeat probable cause and void search warrant on defendant's residence; while possible that trash in cans behind residence was not generated by defendant, most likely scenario was that trash cans placed directly behind home were used by those who lived there, regardless of whether there were two trash cans located behind home, rather than one; probable cause reinforced by fact that letter addressed to subject house number was found inside trash bags); *State v. Bordner*, 53 S.W.3d 179 (Mo. App. 2001) (although officers did not see who put trash bags in front of defendant's house, bags' being in front of house on day designated for trash pick up and previous reports that defendant had been making methamphetamine gave court reasonable basis for inferring that bags' contents had originated inside defendant's house). But, see, *State v. Malone*, 50 Kan. App. 2d 167, 323 P.3d 188 (2014) (there was not sufficient link between contraband and residence when trash recovered from curb in front of residence, but police found contraband in one trash bag and information concerning occupancy of residence in separate bag); *People v. Burmeister*, 313 Ill. App. 3d 152, 728 N.E.2d 1260, 245 Ill. Dec. 903 (2000) (affiant officer failed to describe indices of residency in trash; held police may not presume that evidence they discover in curbside trash originated from nearest residence; when police discover recently deposited curbside contraband, magistrate may issue warrant to search resident's home if officer's complaint describes eyewitness account of resident dumping trash for collection).

As the U.S. Supreme Court stated, "'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). As such, under a totality of the circumstances approach,

practical commonsense inferences can be made that the trash pulled was sitting next to the curb in front of the address on Pinkney Street for which the search warrant was sought and that the "miscellaneous papers of venue" would have indicated that same address.

As to the somatropin found in the trash pull, Krajicek does not contest that somatropin is a controlled substance; instead, he simply argues that it can be obtained legally and that there was no probable cause to believe the somatropin recovered in the trash pull was obtained illegally. Specifically, Krajicek argues Finn's research "only yielded items that were entirely consistent with legal possession of a controlled substance." Brief for appellant at 11. We disagree. Initially, we note that Finn's statement that he believed the somatropin was obtained illegally from another country, based on "an unknown language" appearing on the vials along with English, did not contain sufficient foundation for his belief. However, there was other evidence establishing probable cause to believe that the somatropin was obtained illegally. During the trash pull, Finn found five syringe needles and two empty vials with the labeling of "'[s]omatropin (rDNA origin) for injection.'" Finn's research of somatropin revealed the substance was on "the Drug Enforcement Administration list as a human growth hormone" and that as part of "the 1990 Anabolic Steroids Control Act, the distribution and possession, with the intent to distribute, of hGH 'for any use other than the treatment of a disease or other recognized medical condition, pursuant to the order of a physician' is a violation of Nebraska state statute 28-416." Finn examined the somatropin found in the trash and "observed no indication of a valid prescription for Krajicek or identifiable numbers." Based on the fact that there was no indication of a valid prescription for Krajicek or "identifiable numbers" on the somatropin, there was probable cause to believe that the drugs were obtained illegally and that evidence of criminal activity would be found in the residence.

For the reasons stated above, under the totality of the circumstances illustrated by the affidavit, we find the issuing magistrate had a substantial basis for finding that Affidavit #1 established probable cause for a search of the residence. Because we find there was probable cause to support the warrant for the residence, the remaining warrants were not fruit of the poisonous tree.

However, we, like the district court, note that the warrant for the safety deposit box was not supported by a sufficient probable cause affidavit. Affidavit #2 only contained the information from Affidavit #1, and then said that in the search of the residence, they found safety deposit box keys. Affidavit #2 did not include the other items located during the search of Krajicek's residence, such as the 40 grams of marijuana, 122 vials of various sizes and brands of unknown drugs, miscellaneous items of drug paraphernalia, 6 cellular phones, and $10,000 in cash which could be indicative of drug dealing behavior. Thus, in reviewing the affidavit "only on the four corners," we determine that probable cause to search the safety deposit box was not established. However, as discussed below, we find that the good faith exception applies to the search of the safety deposit box.

*Good Faith Exception.*

Initially, we note that Krajicek contends the State has the burden to show the good faith exception applies. Then he says that at the suppression hearing, the State offered no evidence beyond the affidavits, warrants, and inventory returns and made no argument as to good faith. However, Krajicek's claim that the State made no argument as to good faith is not supported by the record. At the conclusion of the suppression hearing, the parties were given time to submit legal briefs. And in its order on Krajicek's motion to suppress, the court said, "The State argues that as an alternative to its argument that the search warrants were supported by probable cause, the warrants are still valid because the 'Leon' good

faith exception applies." Clearly, the State made an argument regarding the good faith exception.

[15] Krajicek further argues the good faith exception does not save the search warrants. The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands. *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017). The exclusionary rule "'operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."'" *State v. Hoerle*, 297 Neb. at 847, 901 N.W.2d at 332. Thus, a Fourth Amendment violation does not necessarily mean that the exclusionary rule applies. *State v. Hoerle, supra*.

[16,17] Because the exclusionary rule should not be applied to objectively reasonable law enforcement activity, the U.S. Supreme Court created a good faith exception to the rule. *Id.*

> [T]he good faith exception to the exclusionary rule [was] first recognized in *United States v. Leon*[, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)]. The good faith exception provides that even in the absence of a valid affidavit to support a search warrant, evidence seized under the warrant need not be suppressed when police officers act in objectively reasonable good faith in reliance upon the warrant. Evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. In *Leon*, the Supreme Court noted that "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of the exclusionary

rule. The Court recently provided further guidance on this point, writing in *Herring v. United States*[, 555 U.S. 135, 144, 129 S. Ct. 695, 702, 172 L. Ed. 2d 496 (2009)]: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."

*State v. Nuss*, 279 Neb. 648, 656-57, 781 N.W.2d 60, 68 (2010).

Krajicek limits his good faith argument to the third situation noted above in *Nuss*, specifically that the warrant for the residence was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Although we previously found that the search of the residence was supported by a probable cause affidavit, we note that even if probable cause was lacking, the good faith exception would have applied. In particular, we note that the case law regarding the inference of a nexus between a trash can and a particular residence has been decided differently by different jurisdictions, and Finn and the issuing magistrate would have no way of knowing how Nebraska courts would rule. See *State v. Nuss, supra* (holding good faith exception applied because it was not clear under Nebraska law that labeling intercepted computer images as child pornography was insufficient, standing alone, to establish probable cause to search for evidence of visual depiction of sexually explicit conduct involving minors). Accordingly, under the totality of the circumstances in this case, Finn acted in objectively reasonable good faith in reliance upon the warrant. We find that the good faith exception applies and that the evidence recovered pursuant to the warrant for the residence should not be suppressed or excluded.

As to the search warrant for the safety deposit box, as noted by the district court, there would have been sufficient

probable cause if Finn had not left out the other items retrieved during the execution of the search warrant of the residence (i.e., 40 grams of marijuana, 122 vials of various sizes and brands of unknown drugs, miscellaneous items of drug paraphernalia, 6 cellular phones, and $10,000 in cash which could be indicative of drug dealing behavior); which information Finn did include in the subsequent affidavits. This was not the type of deliberate, reckless, or grossly negligent conduct which the exclusionary rule serves to deter. Under the totality of the circumstances in this case, Finn acted in objectively reasonable good faith in reliance upon the warrant. Accordingly, we, like the district court, find that the good faith exception applies and that the evidence recovered pursuant to the warrant for the safety deposit box should not be suppressed or excluded.

## CONCLUSION

For the reasons stated above, we find the district court did not err in denying the motion to suppress. The judgment of the district court is affirmed.

AFFIRMED.