IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. HUFFMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHARLES E. HUFFMAN, APPELLANT.

Filed May 15, 2018.    No. A-17-762.

Appeal from the District Court for Douglas County, W. RUSSELL BOWIE III, Judge, on appeal thereto from the County Court for Douglas County: DEREK J. VAUGHN, Judge. Judgment of District Court affirmed.

Andrew J. Hilger, of Law Office of Andrew J. Hilger, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

### INTRODUCTION

Charles E. Huffman appeals his conviction for violating a harassment protection order after a stipulated bench trial in the county court for Douglas County. Huffman appealed to the district court for Douglas County, which affirmed the county court's judgment. Huffman argues on appeal to this court that evidence obtained from a search of his cell phone should have been suppressed. Finding no error in the denial of Huffman's motion to suppress, we affirm.

### BACKGROUND

Huffman was in an intimate relationship with E.H., which ended approximately 1 year prior to the charges filed in this case. Huffman and E.H. both worked for the same employer. E.H. had a second job as a massage therapist, of which Huffman was aware.

After their relationship ended, E.H. began to receive unwanted text messages from an unknown telephone number, which she believed were from Huffman based on her experience texting with Huffman during their relationship. She responded to the text messages, stating she knew it was Huffman and she asked for the communication to cease. However, E.H. continued to receive text messages she described as "spewing hatred towards me, women, and society." She obtained an ex parte harassment protection order on August 18, 2015, because she wanted the "harassment" to stop. Following a hearing requested by Huffman regarding the ex parte order, the ex parte order was continued for 1 year from its date of issuance. Huffman was ordered to have no contact with E.H. after August 18.

E.H. continued to receive text messages from the unknown telephone number from August 19 to September 17, 2015, including messages containing pictures of herself that Huffman had taken during their relationship. Two of E.H.'s friends also received inappropriate text messages from the same unknown telephone number, and those messages contained intimate photos of E.H. Based on the content of the texts, E.H. believed the texts were from Huffman and she made multiple police reports regarding the ongoing communications despite the protection order. E.H. spoke with a detective with the Omaha Police Department regarding her reports, and the detective subsequently filled out an arrest warrant for Huffman for stalking and violation of a harassment protection order. Huffman was arrested on September 17, and his cell phone was seized. A warrant to search the cell phone was obtained and the police extracted data from the device "including call logs, messages and the contact list." Huffman was subsequently charged with one count of stalking E.H. from August 14 to September 17, pursuant to Neb. Rev. Stat. § 28-311.03 (Cum. Supp. 2014), and one count of violation of a harassment protection order on August 28, pursuant to Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2014).

On August 22, 2016, Huffman filed a motion to suppress all evidence obtained from the search of his cell phone, arguing that the affidavit supporting the search warrant lacked probable cause. Following a hearing on Huffman's motion, the county court entered an order denying the motion.

A stipulated bench trial took place on November 28, 2016. The State moved to dismiss the stalking charge, and to amend the dates on the criminal complaint; both motions were granted. The State offered evidence obtained through the search of Huffman's cell phone, and Huffman renewed his objection to any evidence stemming from that search. The court overruled the objection and subsequently found Huffman guilty of violation of a harassment protection order. Huffman was sentenced to 4 days in jail and he was ordered to pay a $500 fine.

Huffman appealed his conviction to the district court for Douglas County, challenging the county court's admission of evidence from the search of Huffman's cell phone and the sufficiency of the evidence to support his conviction. The district court entered an order on June 30, 2017, affirming the county court's judgment. Huffman appeals.

ASSIGNMENT OF ERROR

Huffman assigns the district court erred by affirming the county court's denial of his motion to suppress the evidence obtained from the search of his cell phone.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018).

## ANALYSIS

A warrant is generally required before searching the digital information stored on a cell phone, even when the cell phone is seized from an individual incident to arrest. See *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). See, also, *State v. Jenkins*, 294 Neb. 684, 884 N.W.2d 429 (2016). A search warrant for Huffman's cell phone was issued in this case, however, Huffman argues the affidavit supporting the search warrant lacked probable cause. Therefore, he claims the search of his cell phone violated the Fourth Amendment to the U.S. Constitution.

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." and further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Nebraska Constitution provides similar protection.

The execution of a search warrant without probable cause is unreasonable and violates these constitutional guarantees. Accordingly, a search warrant, to be valid, must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued.

*State v. Hidalgo*, 296 Neb. 912, 917, 896 N.W.2d 148, 153 (2017) (brackets and ellipses in original).

The magistrate who is evaluating a probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Krajicek*, 25 Neb. App. 616, ___ N.W.2d ___ (2018). Probable cause

to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *Id*. Further, a magistrate's determination of probable cause to issue a search warrant should be paid great deference by reviewing courts. *Id*.

Huffman argues, "Nothing in [the detective's] affidavit connects Huffman to the phone number from which [E.H.] said the texts were received other than [E.H.'s] subjective belief." Brief for appellant at 8. Huffman claims E.H.'s "subjective suspicion" the calls were from Huffman is not sufficient to link the phone number to Huffman, as "[h]er suspicion was based upon vague similarities to text messages she says she received from Huffman about 2 years prior." *Id.* at 7. He suggests that "[t]he vague similarities to texts many months prior is *possible* cause, not probable." *Id.* at 8 (emphasis in original). Huffman also claims the good faith exception to the exclusionary rule does not apply if the supporting affidavit is "'so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable.'" *Id*. (quoting *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012)). Huffman claims the "vague suspicions of the reporting party" cannot amount to probable cause. Brief for appellant at 9.

We do not see the detective's reliance on information obtained from E.H. to be based on E.H.'s "vague suspicions." Applying the totality of the circumstances test set forth above in *State v. Hildalgo, supra*, the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. And probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id*. We conclude the totality of the circumstances described in the detective's affidavit demonstrated that there was a fair probability that evidence of a crime would be found, specifically, that Huffman was the sender of the offensive and harassing text messages after a protection order was entered prohibiting him from engaging in such activity.

The affidavit at issue in this case confirms the existence of a valid protection order entered against Huffman, and also confirms that he was served with that protection order on August 25, 2015. The affidavit describes E.H. contacting the police department on August 27 with regard to a violation of the protection order E.H. had against her ex-boyfriend, Huffman. The violation (specifically 5 text messages sent to E.H.) occurred between August 26 and August 27. After that, several additional reports of protection order violations were filed by E.H. The detective met with E.H. on September 11 to discuss the repeated protection order violations. E.H. told the detective that she and Huffman had dated and lived together "in 2010 until 2011," and after they broke up in 2011, they continued "to date on and off." In 2014, Huffman began "to send inappropriate text messages and letters to [E.H.'s] home and threatened to ruin her reputation in [the] male dominated field" in which she and Huffman worked; E.H. and Huffman work for the same employer. Although E.H. changed her telephone number, E.H. believed Huffman obtained her new telephone number through a work directory.

The affidavit states that before E.H. obtained the harassment protection order, she received text messages from an unknown phone number within area code 712. On August 14, 2015, she received a message indicating the person texting would be in town in a week and wondered if she was still in the massage business, and inquired about her rate. After E.H. responded, she received a text back, asking, "Can I get the same services you provide for your bosses in Engineering??"

E.H. believed the text messages were from Huffman because he had constantly accused E.H. of having affairs with her coworkers. The affidavit noted that E.H. received additional text messages on August 16, and daily from August 19 through August 25.

The affidavit goes on to describe in detail the text messages received after the protection order was served on Huffman. E.H. received a text on August 26, 2015, which talked, in part, about wasting "so much time contemplating and searching for love before that insidious and vindictive whore taught him it didn't emanate from emotion." More texts were received on August 27 referring to cartoon characters and how they "were just stupid queers," and in subsequent days, there were texts about women needing to be forced to acknowledge their sexual inferiority and the "prophet's wisdom is coming to engulf" western civilization. There were a number of texts going on into the month of September, many of which talked about "queers," and one on September 13 which talked about civilizations being built "by masculine power and eventually destroyed by feminine impulse."

The affidavit also states E.H. was told by a friend that she received a text from the same area code 712 telephone number, and it had a picture of E.H. standing in her kitchen with the words, "This queer whore is going to burn!!" Another text sent on September 13, 2015, had a picture of E.H. in her underwear with the words, "Her reputation in the organization is going to be fried in the pan of humiliation." These same text messages were also sent to another person who E.H. had contacted.

The affidavit indicates that Huffman was arrested on September 17, 2015, and "a cell phone was located in his possession." It was booked into property as evidence, and it was "believed that digital data stored on the phone may irrefutably link [Huffman] to the incident being investigated." The affidavit goes on to describe how cell phones create a digital record of the user's activity and can provide invaluable insight for criminal investigations.

The detective's affidavit clearly set forth facts demonstrating the basis of E.H.'s knowledge, notably, her past intimate relationship with Huffman over a period of years, which included living together. E.H. would have been aware of Huffman's attitudes and use of language, and while we did not provide the content of every text, it is evident the person texting has specific biases and attitudes that would be familiar to an intimate partner. Also significant in the affidavit is the representation that other persons were receiving text messages from the same area code 712 telephone number containing pictures of E.H. with threatening and derogatory words. The affidavit also confirmed the existence of the protection order, which indicates that E.H. necessarily submitted a sworn statement that Huffman was harassing her in some way. Under the totality of the circumstances illustrated by the affidavit, the issuing judge had a substantial basis for finding that the affidavit established probable cause that evidence of Huffman's violations of the harassment protection order would be found in his cell phone.

Because we conclude the affidavit contained sufficient facts to establish probable cause for the issuance of a search warrant, we need not address Huffman's argument that the good faith exception to the exclusionary rule would not apply. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

## CONCLUSION

For the reasons set forth above, we affirm the district court's order entered on June 30, 2017, affirming the county court's judgment.

AFFIRMED.